**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**JEFFREY D. BRYANT,**

**Plaintiff,**

**v.**

**BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN,**

**Defendant.**

**CIVIL ACTION FILE**

**NO. 1:12-CV-936-MHC**

# ORDER

This action is brought by Plaintiff Jeffrey D. Bryant ("Bryant") against Defendant Bert Bell/Pete Rozelle NFL Player Retirement Plan ("Defendant" or "Plan"), an employee benefit plan governed by the Employees Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq*. Bryant is a former National Football League ("NFL") player, having played for the Seattle Seahawks from 1982 – 1994. The Plan, the product of a collective bargaining agreement between the NFL Players Association and the NFL Management Council, is a retirement plan that provides disability, retirement, and related benefits to eligible NFL players. Although he currently receives "Inactive" Total and Permanent ("T&P") disability benefits from the Plan, Bryant once again seeks judicial review of the Plan's refusal to reclassify his benefit level to the higher-

paying "Football Degenerative" T&P disability benefit category. See 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought by a participant or beneficiary [of an employee benefit plan] . . . to recover benefits due to him under the terms of the plan . . . or to clarify his rights to future benefits under the terms of the plan . . . .").

## I. PROCEDURAL HISTORY

On or about December 1, 2008, Bryant filed his initial application for T&P disability benefits with the Plan based upon a variety of orthopedic and neurological impairments. (AR[1] 112-23.) Bryant indicated he was employed with Guyco Plumbing at the time of his application. (AR 114.) Bryant was advised by the Plan's Disability Initial Claims Committee ("DICC") that, pursuant to Section 5.2 of the Plan,[2] his application for T&P disability benefits was denied on December 17, 2008, because his application indicated he was "currently

[1] For purposes of this Order, "AR" refers to the original administrative record of proceedings filed by the Plan under seal on November 7, 2012 [Doc. 24], and "Supp AR" refers to the Supplemental Administrative Record filed by the Plan under seal on October 3, 2014 [Doc. 39].

[2] Section 5.2 of the Plan, entitled "Determination of Total and Permanent Disability," provides in pertinent part that a vested inactive player will be deemed to be "totally and permanently disabled" if he is "substantially unable to engage in any occupation or employment . . . ." Section 5.2(a) of the Plan (AR 131).

employed." (AR 131-32.) Bryant did not appeal the DICC decision within the 180 days permitted for such an appeal. (AR 286.)

On or about June 10, 2010, Bryant reapplied for T&P disability benefits, indicating that he was "appealing his last denial on December 17, 2008," having just learned that his previous attorney did not file an appeal. (AR 148-53.) As a part of his 2010 application, Bryant omitted any reference to his earlier employment with Guyco Plumbing[3] and included a decision by the Social Security Administration ("SSA") that granted him social security disability benefits after a preliminary finding of disability as of December 1, 2009, with benefits to begin in May 2010. (AR 143-46, 151-52.) On July 8, 2010, the DICC, having considered Bryant's June 10, 2010, request as a new application, awarded him "Inactive" T&P disability benefits based on the SSA's December 1, 2009, disability finding. (AR 170-72.) The DICC based its decision on Section 5.2(b) of the Plan, which states: "Effective April 1, 2007, a Player who has been determined by the Social Security Administration to be eligible for disability benefits . . . and who is still receiving such benefits at the time he applies, will be deemed to be totally and permanently disabled . . . ." (AR 170, 266.) The DICC also determined that Bryant was not

[3] Bryant included a letter from his brother, the owner of Guyco Plumbing, indicating that Bryant never was an employee of the business (AR 154).

eligible for any other category of disability benefits, including "Football Degenerative" T&P benefits, because Bryant became totally and permanently disabled "more than fifteen years after March 31, 1994, which is the end of [his] last credited season."[4] (AR 172.) There is nothing in the DICC's decision that indicates whether Bryant's disability arises out of NFL football activities, which also is a prerequisite for obtaining "Football Degenerative" benefits. See Section 5.2(c) of the Plan (AR 264). Once again, Bryant did not appeal the DICC's determination within 180 days.

Bryant did appeal the SSA's preliminary disability finding concerning the onset date of his disabling condition. Based upon additional medical records submitted on appeal, by order dated February 24, 2011, the administrative law judge ("ALJ") granted Bryant's appeal, finding that Bryant was disabled as of June 1, 2008, due to various orthopedic impairments. (AR 182-87.) The ALJ made no

---

[4] Section 5.1 of the Plan provides two categories of "T&P" disability benefits for vested retired NFL Players who, like Bryant, become disabled more than twelve (12) months after their last credited NFL season: (1) Football Degenerative – where the disability arises out of NFL football activities, and results in total and permanent disability *before* fifteen (15) years after the end of the player's last credited season; and (2) Inactive – where the total and permanent disability arises from other than NFL activities and results in total and permanent disability fifteen (15) or more years *after* the end of the Player's last credited season. (AR 264.)

specific finding that Bryant's injuries arose out of his NFL playing activities, although he noted that Bryant certainly believed that to be the cause. (Id.)

On or about April 20, 2011, Bryant petitioned the Plan's DICC to reclassify his "Inactive" T&P disability benefits to "Football Degenerative" T&P benefits based upon the SSA's decision to alter the date of Bryant's disability to June 1, 2008. (AR 200-01.) On or about June 10, 2011, the DICC denied Bryant's request for reclassification of benefits to the "Football Degenerative" category of T&P benefits. (AR 211-13.) The reasons for the DICC's denial were expressed as follows:

> As you know, Mr. Bryant was awarded inactive T&P benefits at the Committee's July 8, 2010 meeting. The basis of that award was an award of Social Security disability benefits. Mr. Bryant previously applied for T&P benefits in November 2008, but that claim was denied in December 2008 because Mr. Bryant was working at that time.
>
> You submitted a request for reclassification . . . . You state that Mr. Bryant qualifies for reclassification because the Social Security Administration has changed the effective date of Mr. Bryant's Social Security disability benefits from December 1, 2009 to June 1, 2008, which you state is within the 15-year period required for the Football Regenerative category. You attach the Administrative Law Judge's decision making this change, dated February 24, 2011. You also state that it is clear from the Administrative Law Judge's decision that Mr. Bryant's totally and permanently disabling impairments are football related.

> At its May 26, 2011 meeting, the Committee rejected your arguments. The Committee found that under the Plan provisions . . . the effective date established for Social Security disability benefits is not binding on the Plan with respect to classification issues. The Committee noted that the Social Security effective date is inconsistent with the December 17, 2008 denial of Mr. Bryant's prior application for T&P benefits (which Mr. Bryant did not appeal). The Committee was unable to reconcile this inconsistency. The Committee also noted that the worker's compensation records that appear to have been the basis for the new Social Security effective date were presented to the Committee with Mr. Bryant's previous unsuccessful claim.
>
> The Committee determined that, taken as a whole, the circumstances do not present clear and convincing evidence that Mr. Bryant meets the qualifications for the Football Degenerative category because of changed circumstances.

(AR 212-13.)

On June 30, 2011, Bryant appealed the DICC decision denying reclassification to the Plan's Retirement Board ("the Board"). (AR 217-18.) The Board denied the appeal at its August 4, 2011, meeting (AR 223-26), reiterating that "the fact of a new Social Security date does not constitute a 'changed circumstance' within the meaning of the Plan." (AR 225.) The Board stated that it "has interpreted the term 'changed circumstances' to mean a change in the Player's physical condition, such as a new or different disability." (Id.) The Board then opined that, even if changed circumstances were "hypothetically present," the evidence was not "clear and convincing" because the SSA's findings were not

binding on the Board and the Board did not have the records that were available to the ALJ. (Id.) There is nothing in the Board's decision that indicated whether Bryant's disability arises out of NFL football activities.

On March 20, 2012, Bryant then filed his complaint in this Court to challenge the Board's denial of his request for reclassification. [Doc. 1.] After both sides filed competing motions for summary judgment [Docs. 25, 26], Judge Vining conducted a review of the record submitted by the parties and concluded that it was not clear that the Board "considered all of the medical information that [Bryant] produced in support of his initial claim as well as his request for reclassification from 'Inactive' to 'Football Degenerative.'" Order of May 30, 2013 [Doc. 30] at 14. Judge Vining remanded the matter to the Board for reconsideration based on a review of the complete medical record and provided that, after the Board issued a determination on remand, either party could move to reopen the case. Id. at 17.

On August 13, 2013, the Board again denied Bryant's reclassification request from Inactive T&P disability benefits to the Football Degenerative category. (Supp AR 428-33.) Prior to the vote, each member of the Board was given a binder containing the entire administrative record in this case, including this Court's Order on Remand. (Supp AR 431.) According to the letter of August

26, 2013, which detailed the reasons for its decision, the Board reviewed the medical records identified by Judge Vining and determined that they do not support a finding that Bryant was totally and permanently disabled prior to March 31, 2009. (Supp AR 431-32.) The Board again rejected Bryant's contention that the SSA's revised decision as to the effective date of Bryant's disability is binding on the Plan finding, as it did previously, that there were no changed circumstances within the meaning of the Plan:

> The Retirement Board has consistently interpreted Section 5.5(b)'s changed circumstances provision to require a change in the Player's physical condition, such as a new or different impairment. Mr. Bryant's reclassification request does not involve any new or different physical conditions; instead, it presents additional evidence involving the same conditions that led to the original Social Security award.

(Supp AR 432.)

Bryant filed a motion to reopen this litigation on January 23, 2014 [Doc. 31], which was granted by Judge Vining on February 24, 2014 [Doc. 32]. Bryant again contends that the Plan's latest determination denying him Football Degenerative T&P benefits is contrary to the evidence, arbitrary and capricious, and an abuse of the Retirement Board's discretion. Pl.'s Mot. to Reopen at 3.

This Court has reviewed the entire record in this case,[5] including the supplemental administrative record filed by the Plan on October 3, 2014 [Doc. 39], Defendant's Renewed Motion for Judgment of the Administrative Record [Doc. 40], Bryant's Cross-Motion for Summary Judgment [Doc. 41], and both parties' briefs.

## II. STANDARD OF REVIEW AND CONTENTIONS

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989) (internal quotation marks and citation omitted). ERISA requires that benefit plan procedures "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2).

Because the "typical summary judgment analysis does not apply to ERISA cases," Ruple v. Hartford Life & Accident Ins. Co., 340 F. App'x 604, 611 (11th Cir. 2009), the Eleventh Circuit uses the following multi-step guide to review an administrator's decision to deny benefits:

---

[5] This case was reassigned to the undersigned on December 12, 2014.

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.,* the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1355 (11th Cir. 2011).

Bryant contends that the Board's decision was "wrong" because the Board did not have the discretion to dispute the SSA's determination that his disability began on June 1, 2008, and that the Board erroneously evaluated his claim under the Plan's "General Standard" instead of the "Social Security Award Standard." Pl.'s Mem. In Supp. of Cross-Mot. for Summ. Jgmt. ("Pl.'s Mem.") [Doc. 41-1] at

3, 14. Bryant also contends that, even though the Plan never made a determination of whether his disability arose out of NFL activities, the evidence "clearly shows that the basis for Bryant's grant of Social Security disability was his injuries stemming from NFL activities." Id. at 7. Bryant argues that only the first two of the six steps of review adopted by the Eleventh Circuit are applicable in this case and stipulates that "there is no conflict of interest and the heightened arbitrary and capricious standard" is not applicable. Id. at 14.

Defendant contends that the Board's decision should be upheld because Bryant's request for reclassification was not based upon a new or different physical impairment. Mem. of Law in Supp. of Def.'s Renewed Mot. for Jgmt. on the Admin. Record [Doc. 40-1] at 17-18. Defendant also contends that the Plan was authorized to interpret the term "changed circumstances" to mean a subsequent change in physical condition as opposed to a change in the date of the onset of a disability by the SSA, and that such an interpretation is reasonable. Id. at 18-19. In addition, assuming *arguendo* that Bryant satisfied the "changed circumstances" requirement, Defendant asserts that the record did not clearly and convincingly establish that Bryant became disabled prior to March 31, 2009, which would have had to be established for him to qualify to receive the higher "Football Degenerative" T&P benefits. Id. at 21-24.

## III. DISCUSSION

The first inquiry for this Court is whether the Board was wrong in concluding that the SSA's decision to alter the date of the onset of Bryant's disability from December 1, 2009, to June 1, 2008, was not a "changed circumstance" under the Plan so as to authorize a reclassification of his T&P disability benefits. The applicable portion of the Plan is Section 5.5(b), which provides as follows:

> Reclassification. A Player who becomes totally and permanently disabled and who satisfies the conditions of eligibility of benefits under Section 5.1(a), 5.1(b), 5.1(c), or 5.1(d) will be deemed to continue to be eligible only for the category of benefits for which he first qualifies, unless the Player shows by evidence found by the Retirement Board of the Disability Initial Claims Committee to be clear and convincing that, *because of changed circumstances*, the Player satisfies the conditions of eligibility for a benefit under a different category of total and permanent disability benefits.

(AR 269; emphasis added.) The term "changed circumstances" is not defined in the Plan.

The Plan itself vests the Board with "full and absolute discretion, authority, and power to interpret" the Plan, including the power to "[d]efine the terms of the Plan . . . construe the Plan . . . and reconcile any inconsistencies therein." Section 8.2(a) of the Plan (AR 276). The interpretation of a term in a retirement plan by an administrator should be affirmed if reasonable, uniform, and not arbitrary and

capricious. Firestone Tire & Rubber, 489 U.S. at 110-11; Cagle v. Bruner, 112 F.3d 1510, 1518 (11th Cir. 1997).

The Plan's interpretation of the term "changed circumstances" has been previously reviewed by another federal district court. The plaintiff in Boyd v. Bert Bell/Pete Rozelle NFL Player Ret. Plan, 796 F. Supp. 2d 682 (D. Md. 2011), like Bryant, "requested reclassification of his T&P benefits from Inactive to Football Degenerative." Boyd, 796 F. Supp. 2d at 688. Boyd argued, in part, that the reclassification was warranted because the SSA found Boyd to be disabled due to head trauma and a physician reexamined Boyd and reiterated his opinion that Boyd's head injury occurred when he was playing football. Id. The Board concluded that there was no evidence of "changed circumstances" justifying the reclassification of T&P benefits, interpreting the term to mean a change in physical condition. Id. at 689, 692. Boyd urged a different interpretation, but the court disagreed:

> Here, the entity to which deference is owed—the Board—has adopted a different, yet reasonable, interpretation. The Board's interpretation does not violate the ordinary meaning of the term "changed circumstances," and it is not contrary to any other provision in the Plan. In addition, Boyd has not shown that, in the past, the Board construed "changed circumstances" in a different manner. Accordingly, the Board did not abuse its discretion in interpreting the terms of the Plan. . . . In fact, Boyd's evidence indicated that his physical condition had not changed since his prior application.

Id. at 693; see also Hill v. Bert Bell/Pete Rozelle NFL Player Ret. Plan, 4:13CV94, 2014 WL 4229694, at *6 (E.D. Tex. Aug. 26, 2014) (appeal of initial determination not a request for reclassification because of changed circumstances, which could be demonstrated only by a change in physical condition); Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan, No. A-10-CA-515-SS, 2011 WL 9374867, at *11 (W.D. Tex. Nov. 10, 2011) (not error to refuse to follow SSA decision where there was no clear and convincing evidence of changed circumstances sufficient to reclassify T&P benefits), aff'd, Atkins v. Bell, 654 F.3d 557 (5th Cir. 2012).

Although Bryant mounts a futile effort to distinguish Boyd from the instant case and complains that there are no other cases in which the term "changed circumstances" has been limited to a change in physical condition (which is not so), Bryant cites no cases where a plan administrator's interpretation of a similar term has been held to be arbitrary or capricious. Bryant made a decision to "put all his eggs in one basket" – the revised determination by the SSA as to the onset date of his disability – in hopes that the Plan would adopt that as a "changed circumstance" so as to reclassify his T&P disability benefits. However, this Court concurs with the decision of the Boyd court that the Plan's interpretation of the

term "changed circumstances" as meaning a change in physical condition is within the authority of the Plan and reasonable.

Bryant also argues that the Board did not properly apply Section 5.2(b) of the Plan, which states:

> Social Security Awards. Effective April 1, 2007, a Player who has been determined by the Social Security Administration to be eligible for disability benefits under either the Social Security disability insurance program . . . and who is still receiving such benefits at the time he applies, will be deemed totally and permanently disabled, unless four voting members of the Retirement Board determine that such Player is receiving such benefits fraudulently and is not totally and permanently disabled.

(AR 266.) In fact, the DICC applied this provision when it awarded Bryant Inactive T&P disability benefits on July 8, 2010 (and, in the same decision, determined that Bryant was not eligible for Football Degenerative T&P benefits). This decision became final because Bryant never appealed it to the Board. Again, rather than challenging the decision of the DICC that Bryant's disability did not arise before fifteen years after the end of his last credited season, Bryant chose to appeal the SSA decision, perhaps in hope that he could use it to convince the Plan to alter its final decision by way of a reclassification. But Section 5.2(b) of the Plan does one thing and one thing only – it deems any Player who receives a disability determination made by the SSA to be totally and permanently disabled

under the Plan. That entitles the Player to T&P disability benefits, but does not determine the category of those benefits.[6] The subsequent decision of the SSA to change the date for the onset of Bryant's disability did not result in the automatic awarding of Football Degenerative T&P benefits under Section 5.2(b). Consequently, this Court concludes that the Board's decision that the SSA's determination of the date of disability does not obligate the Plan to award a certain category of T&P disability benefits is not wrong.

This does not end this Court's inquiry. Judge Vining remanded this case to the Board to consider Bryant's medical records that appeared not to have been reviewed during the first administrative proceeding. On remand, the Board found that this medical evidence "does not support a finding that Mr. Bryant was totally and permanently disabled prior to March 31, 2009, such that he could be eligible for Football Degenerative T&P benefits, much less clear and convincing evidence

---

[6] This is consistent with Judge Vining's earlier ruling that "the court agrees with the Plan that Section 5.2(b) does not obligate the Retirement Board to accept Social Security Administration determinations related to the classification of T&P plan benefits . . . ." Order of May 30, 2013 [Doc. 30] at 16 n.1. It could be argued that Judge Vining's earlier ruling is binding under the law of the case doctrine. See Murphy v. FDIC, 208 F.3d 959, 966 (11th Cir. 2000) ("the purpose of the doctrine is to bring to an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided."). Regardless of whether that doctrine applies, the undersigned is convinced that Judge Vining's earlier ruling is correct based upon the above analysis.

that he was totally and permanently disabled earlier than March 31, 2009." (Supp AR 432.) This Court must also review this decision *de novo* to determine whether it is wrong. Blankenship, 644 F.3d at 1355.

First, it must be noted that none of the three physicians whose medical records were reviewed by the Board concluded that Bryant was totally and permanently disabled prior to March 31, 2009. (AR 47-123.) Bryant contends that this is "irrelevant" because he was determined to be disabled by the SSA. Pl.'s Mem. at 4. As noted above, that determination does not control the category of disability under the Plan.

Second, an individual review of the three physician's records does not support a reclassification of Bryant's T&P disability benefits.[7] A summary of those records are as follows:

(a) Dr. Jay Prakash – Dr. Prakish is an internist and occupational medicine specialist. (AR 48.) He opined that Bryant has hypertension and hypertensive heart disease as a result of obesity

[7] It should be noted that there is no dispute that Bryant suffered numerous musculoskeletal injuries during his professional football career, which are detailed in the various medical histories taken by the physicians who examined him. The issue is not whether he was injured throughout his NFL career but whether those injuries caused him to be totally and permanently disabled prior to March 31, 2009, so that he would be entitled to Football Degenerative T&P benefits.

which was "contributed to by his relative inactivity when he stopped playing professional football due to his work-related injuries." (AR 59.) Dr. Prakish indicated that Bryant is precluded from heavy lifting. (Id.)

(b) Dr. Lynn Wilson – Dr. Wilson is an orthopedist. (AR 63.) Following an initial examination, Dr. Wilson opined that Bryant's "current symptoms and disability is (sic) as a result of the cumulative effect of the continuous trauma, which he sustained throughout the entire course of his career as a professional football player." (AR 81.) Dr. Wilson stated that Bryant is precluded from repetitive heavy lifting and repetitive motion of the back; repetitive rotation of the head and neck; repetitive squatting/climbing, kneeling or pivoting, crouching and crawling; and prolonged weight bearing. (AR 84.) There were no work restrictions for his hands. (Id.) After a follow-up MRI scan, Dr. Wilson stated that Bryant's spine condition was "far worse than I anticipated" and recommended a formal work restriction providing for no heavy work. (AR 137.)

(c) Dr. Kenneth Nudleman – Dr. Nudleman is a neurologist. (AR 92.) He diagnosed Bryant with mild postconcussive symptoms,

> intermittent headaches "not rising to the level of disability," and sleep disorder. (AR 95.) With respect to work limitations, Dr. Nudleman opined that Bryant is precluded from working in an environment where he is subject to head trauma. (AR 96.)

Although all three physicians certainly recommended varying degrees of work restrictions for Bryant based upon conditions and injuries that arose, in whole or in part, from his football career, none of those physicians gave any opinions that would mandate a finding of total and permanent disability prior to March 31, 2009.

Therefore, this Court concludes that the Board's finding that the additional medical records that Judge Vining ordered reviewed on remand do not support a reclassification of T&P disability benefits is not wrong.

## IV. CONCLUSION

This Court has reviewed *de novo* the Retirement Board's decision to deny Bryant a reclassification of his Inactive T&P disability benefits to Football Degenerative T&P disability benefits and does not disagree with that decision. Accordingly, the decision of the Plan, as expressed in the Retirement Board's decision of August 13, 2013 (Supp AR 428-33) is **AFFIRMED**. Defendant's Renewed Motion for Judgment on the Administrative Record [Doc. 40] is

**GRANTED**. Plaintiff's Cross-Motion for Summary Judgment Subject to Remand [Doc. 41] is **DENIED**.

The Clerk is **DIRECTED** to close the file.

**IT IS SO ORDERED** this 23rd day of March, 2015.

MARK H. COHEN
United States District Judge